UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICOLAS M. HADDAD,<br><br>Plaintiff,<br><br>v.<br><br>ITT INDUSTRIES, INC., et al.,<br><br>Defendants. | Civil Action 05-00028 (HHK) |

**MEMORANDUM AND ORDER**

Nicolas M. Haddad, a former employee of ITT Industries, Inc. ("ITT"), brings this action against ITT and Colonel Ali Al-Sarraf ("Al-Sarraf"), a Kuwaiti military officer, alleging that they tortiously interfered with his business relationship with the company that employed him after his termination from ITT. Haddad also alleges that ITT unlawfully retaliated against him by terminating his employment and violated an Indiana blacklisting statute that prohibits employers from attempting to prevent discharged employees from securing subsequent employment. Before the court is defendant ITT's motion to dismiss or, in the alternative, to transfer [# 3]. Upon consideration of the motion, plaintiff's opposition thereto, and the record of this case, the court concludes that this action should be transferred to the Northern District of Indiana.

I.

A summary of the pertinent factual allegations underlying this is as follows. ITT is a defense contractor that is incorporated in Indiana. In addition to offices in Indiana, ITT has offices in New York, Virginia, and Washington, D.C.

Haddad was employed by ITT from March 1995 to January 2003, when he was discharged. The genesis of this controversy was ITT's efforts to market its Single Channel Ground & Airborne Radio Systems (SINCGARS) to the Kuwaiti government, a project with which Haddad was involved in his position as Program Manager of ITT's Kuwait office. In 1997, an ITT internal investigation revealed that senior ITT senior officials were "side-stepping" Hadddad and offering bribes to members of Kuwait's military in order to secure the contract. In late 2000, ITT managers held a meeting with individuals who had contacted the company regarding their ability to expedite the Kuwaiti government's approval of the contract. While Haddad had arranged the meeting, he was excluded from the discussions. He nevertheless continued to negotiate with the Kuwaiti government.

As the contract negotiations intensified in early 2001, Haddad grew concerned about a commission being paid to ITT's Kuwaiti agent. Believing that a part of the commission was being used to bribe Kuwaiti officials, he suggested that the amount of the commission be reduced. In February 2001, ITT abruptly moved Haddad from Kuwait to its Fort Wayne, Indiana, office and members of ITT's senior management took over the SINCGARS contract negotiations.

During a meeting in September 2002, Rudolph Lewis, ITT's Vice President, announced that Haddad would be returning to Kuwait as project manager following approval of the SINCGARS contract. However, although ITT secured the SINCGARS contract with Kuwait in mid-October 2002, by late December 2002 Haddad still had not been told when he would return to Kuwait.

In early January 2003, an updated organizational chart for the Kuwait project was distributed in ITT's Fort Wayne office. The chart listed Haddad as being employed in "Export Production" instead of as a "Project Manager" and, during a staff meeting on January 9, 2003, an announcement was made that ITT was conducting interviews for a new project manager in Kuwait. When Haddad stated that he thought he was the project manager he did not receive a response.

The legal obligations ITT faced under Kuwait law relating to the SINCGARS contract were also addressed at the January 9th meeting. In addition to tax obligations, ITT was required to set aside 30 percent of the contract value to pay a Kuwaiti offset company. In accordance with the Foreign Corrupt Practices Act, the offset company could not have any "connection with members of the Kuwait government and military who have any authority to approve or implement the contract." Compl. ¶ 20. John Noble, ITT's Marketing Manager, however, announced that Al-Sarraf had agreed to help ITT with the offset issue. Noble explained that Al-Sarraf was being promoted within the Kuwaiti military, and that he "was going to give ITT a lot of business - over $100 million - since the Colonel's family owns part of the offset company with whom ITT has agreed to work." *Id*. ¶ 40. After the meeting, Haddad confronted Noble about the offset plan, which he believed to be illegal.

Shortly after the meeting concluded, Haddad met with his supervisors who told him "not to discuss issues outside ITT." *Id*. ¶ 43. Thereafter, one of the supervisors gave Haddad a performance evaluation for March 2001 - December 2002, which contained goals and objectives that Haddad had never seen before, and which rated his performance negatively. Haddad had not received a poor evaluation while working at ITT prior to this time. Because he believed the

negative evaluation was being used to force him to quit, Haddad questioned the validity of the evaluation. Shortly thereafter, he was terminated without pay and has since had difficulty locating permanent employment.

## II.

ITT seeks to have this action dismissed or transferred pursuant to FED. R. CIV. P. 12(b)(3). In ruling on a 12(b)(3) motion, "the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Darby v. United States Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002) (citing *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d. 50, 54 (D.D.C. 2001)). When as here, federal jurisdiction is not based solely upon diversity of citizenship, 28 U.S.C. § 1391(b) controls. Section 1391(b) provides that:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where all defendants reside, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

If the venue requirements of section 1391(b) are not met, the court must "dismiss, or if it be in the interest of justice, transfer such case." 28 U.S.C. § 1406(a).

The court agrees with ITT that the District of Columbia is an improper venue for this action. Under section 1391(b)(1), the District of Columbia would be a proper venue only if ITT

**and** Ali-Al Sarraf resided here. While ITT resides in the District of Columbia,[1] Ali-Al Sarraf does not. Al-Sarraf is a citizen and resident of Kuwait. Haddad's assertion that 28 U.S.C. § 1391(d) operates to make the District of Columbia a proper venue, despite Al-Sarraf's residency elsewhere, because it provides that "[a]n alien may be sued in any district " 28 U.S.C. § 1391(d), is without merit. The mere fact that an alien may be sued in any district pursuant to section 1391(d) does not establish that an alien is a resident of a particular district or state. *See Dee-K Enters., Inc. v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640, 644 (E.D. Va. 1997).

The District of Columbia also is not a proper venue for this action under 28 U.S.C. § 1391(b)(2). Under §1391(b)(2), the District of Columbia would be a proper venue if "a substantial part of the events or omissions giving rise to [plaintiff's claims] occurred here. A fair reading of plaintiff complaint clearly reveals that none of the alleged events or omissions giving rise to plaintiff's claims occurred here. The three events mentioned by Haddad in his complaint that took place in the District of Columbia took place after his termination and, thus, cannot be said to have given rise to any of his claims.[2]

Finally, the District of Columbia is not a proper venue for this action under 28 U.S.C. § 1391(b)(3). Under §1391(b)(3), the District of Columbia would be a proper venue for this action, only "if there is no [other] district in which the action may otherwise be brought." As ITT

---

[1] Although ITT is incorporated in Indiana, the company also has offices in Washington, D.C. Section 1391(c) provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. §1391(c).

[2] Haddad states that following his discharge, in 2003 and 2004, he met in the District of Columbia with representatives from the Department of Justice, the Securities and Exchange Commission, and the Federal Bureau of Investigation regarding the SINCGARS contract.

points out, this action may be brought against it in the Northern District of Indiana. Further, to the extent that Al-Sarraf is not entirely immune from suit, for the reasons he sets forth in his motion to dismiss, he is "otherwise" amenable to suit there.

### III.

For the foregoing reasons and because the court concludes that it is in the interest of justice to transfer this case rather than dismiss it, it is this 25th day of August, 2005, hereby

**ORDERED** that this action is transferred to the Northern District of Indiana.


    Henry H. Kennedy, Jr.
    United States District Judge